UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RACHAEL G.,                                             Case No. 3:23-cv-115

    Plaintiff,                                       Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rachael G. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.[1] The Court affirms the ALJ's finding of non-disability because it is supported by substantial evidence in the record.

**I. Summary of Administrative Record**

On June 16, 2021, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging the onset of disability on April 1, 2020 based on chronic back issues, chronic pain syndrome, anxiety, fibromyalgia, and acid reflux. (Tr. 198). After Plaintiff's claim was denied initially and on reconsideration, she requested an evidentiary hearing. On May 10, 2022, Plaintiff and her attorney appeared telephonically before ALJ Gregory Kenyon; a vocational expert also testified. (Tr. 35-59). On May 26, 2022, ALJ Kenyon

---

[1]The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

issued an adverse decision that concluded that Plaintiff was not disabled within the alleged disability period because she could perform her past relevant work. (Tr. 17-30).

Plaintiff was 58 years old on the date of the evidentiary hearing, and remained in the same "advanced age" category through the date of the ALJ's decision. She lives in a single family home with her husband, as well as with her adult son. In her application, Plaintiff reported that she stopped working in March 2020 to care for the adult son, who has cancer. (Tr. 198). Plaintiff has a high school equivalent education and worked as a telephone representative at a call center for thirteen years. (*See* Tr. 42, testifying that her work included both telemarketing and answering calls at a call center).

The ALJ determined that Plaintiff suffers from the following severe impairments: "degenerative disc disease of the thoracic and lumbar spine, obesity, bilateral carpal tunnel syndrome, and arthritis of the wrists." (Tr. 20). However, the ALJ held that Plaintiff's alleged fibromyalgia was not a "medically determinable impairment" because it had not been established by an acceptable medical source with specific evidence, as described under SSR 12-2p. (Tr. 20-21). In addition to Plaintiff's severe impairments, the ALJ found nonsevere impairments of gastroesophageal reflux disease ("GERD"), Barrett's esophagus, and mental impairments including depressive disorder. (Tr. 21, 23-24).

None of Plaintiff impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24). Considering all impairments, the ALJ found that Plaintiff retains the RFC to perform a restricted range of light work, subject to the following limitations:

> except she can occasionally crouch, crawl, kneel, and stoop; occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; no work around hazards such as unprotected heights or dangerous machinery; and frequently use hands for handling and fingering.

(Tr. 25). The vocational expert testified that Plaintiff's prior work as a telephone representative was semi-skilled and sedentary. (Tr. 56). Based upon the RFC as determined and testimony by the VE, the ALJ concluded that Plaintiff still could perform that past relevant work. (Tr. 29). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 30).

If Plaintiff had not been able to perform her past work, she would have been entitled to a presumption of disability based on her advanced age under the Grid Rules. In this appeal, Plaintiff asserts that the ALJ erred in finding her capable of her past work. Specifically she argues that the ALJ erred: (1) by failing to include any mental RFC limitations; (2) by failing to include additional analysis of the psychological opinion evidence; and (3) by placing too much reliance on Plaintiff's daily activities.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In

3

conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims[2]

As stated above, the ALJ in this case ended his analysis at Step 4, concluding that Plaintiff could perform her past work as a telephone representative. If the ALJ had not concluded that Plaintiff remained capable of her past work, she would have been presumed to be disabled under the Grid Rules. *See* 20 C.F.R., Part 404, Subpt. P, App. 2, §§201.00(f), 201.06 (stating that a person of advanced age with no transferable skills should be found disabled unless she has acquired transferable skills as a result of her past relevant work which can be applied to other work with "very little, if any" vocational adjustment). Therefore, Plaintiff's claims challenge the ALJ's conclusion that she retains the residual functional capacity sufficient to perform her prior work.

### 1. Claims Relating to Mental Health Limitations

Plaintiff's first two claims challenge the ALJ's failure to incorporate any mental limitations into her RFC. She points to her testimony describing her prior work as fast-paced and stressful, and that she was beginning to have issues with her "nerves" while

---

[2]Regrettably, Plaintiff's counsel – who appears frequently in this Court - cites solely to PageID numbers rather than to Administrative Transcript ("Tr.") numbers throughout her Statement of Errors and Reply Memorandum. Adding to the confusion, counsel denominates the citations as "Tr." rather than as "PageID." Because PageID citations cannot be easily searched in Social Security cases, Local Rule 8.1(d) <u>requires</u> parties in Social Security cases to "provide pinpoint citations to the administrative record, regardless of whether a party also chooses to provide PageID citations." **Counsel is strongly encouraged to comply with LR 8.1(d) in the future.**

5

at work, shortly before her alleged onset of disability. (Tr. 44). Leaning into that testimony, she posits that the inclusion of any type of mental RFC limitation would have precluded her prior work.

By way of example, Plaintiff cites to an alternative hypothetical question posed by the ALJ to the vocational expert that included a limitation to "simple, routine, repetitive tasks." (Tr. 57). The VE testified that such a limitation would preclude Plaintiff's prior work because that work was semi-skilled. (*Id.*) But the mere fact that the ALJ considered an additional RFC limitation at the hearing, without ultimately adopting any such limitation, says nothing about whether the determination not to include such limitations is substantially supported.

On the record presented, the ALJ found Plaintiff's mental impairments to be "nonsevere," meaning that they do "not cause more than minimal limitation on the claimant's ability to perform basic mental work activities." (Tr. 21). Notably, Plaintiff does not seriously dispute the classification of her mental impairment as "nonsevere" at Step 2 of the sequential analysis. In any event, Step 2 challenges provide no basis for reversal, so long as the ALJ has found at least one other "severe" impairment and has conducted the requisite remaining sequential steps. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ found multiple severe impairments and continued the sequential analysis through Step 4.

Still, Plaintiff argues that the ALJ committed two articulation errors that distinguish this case from *Maziarz* and support reversal. Specifically, she argues that the ALJ failed to comply with a regulatory articulation requirement when assessing the psychological opinion evidence, and further failed to sufficiently articulate his reasons for excluding

6

limitations for her nonsevere mental impairment at Step 4. Contrary to Plaintiff's argument, neither alleged articulation error provides grounds for reversal.

Plaintiff takes no medication for any mental impairment, and has never engaged in any outpatient or inpatient mental health treatment. (*See* Tr. 23). Nevertheless, the ALJ discussed references in the record in which sources assessed Plaintiff as anxious or depressed on occasion. (Tr. 22). But the ALJ contrasted that evidence with many other records that found her to exhibit an appropriate mood and affect, and that described her as appropriately dressed and groomed, pleasant and cooperative with good eye contact and speech, and with good insight and judgment. (Tr. 22-23).

In the absence of treatment records, the most significant medical evidence concerning Plaintiff's mental impairment was comprised of three agency opinions. Robert Kurzhals, Ph.D., completed a consultative psychological evaluation on September 24, 2021. Dr. Kurzhals provided a "Suggested DSM-5 Diagnosis" of "Adjustment Disorder with anxiety and depressed mood." (Tr. 301). In his summary, Dr. Kurzhals wrote:

> [Plaintiff] presented as a friendly and cooperative woman who demonstrated good effort in the evaluation. She reluctantly acknowledged mild depression and anxiety dating back about 1 ½ years, and attributed her distress to not working, no longer being around many people, her son's cancer, and the pandemic. She has had no formal mental health treatment. She has good social support and a positive attitude. She described a stable work history.

(Tr. 302).

During the clinical interview, Plaintiff reported that she had never been fired, generally related adequately to coworkers and supervisors, and was usually able to concentrate and maintain attention in work settings. (Tr. 299). However, Dr. Kurzhals observed: "Her concentration and attention were below average as some questions had to be repeated. She was able to understand and follow simple instructions but some had

to be repeated." (Tr. 300). She was able to recall 3 out of 3 items on a memory test without interference, 2 of 3 with interference, but only 1 of 3 items after a 5-minute delay. (Tr. 301). She also recalled 5 digits forward and 3 digits backward. (*Id.*) She reported "no significant difficulty dealing with the pressures present in competitive work settings," with a work history of "adequately coping with stress" at the call center. (Tr. 302).

Dr. Kurzhals' narrative report offered limited and equivocal opinions concerning functional limitations. Although Plaintiff denied any difficulties in understanding, carrying out and remembering instructions, he opined that the fact that some questions had to be repeated to her "*suggests* there *may* be limitation in this area." (Tr. 302, emphasis added). Similarly, while Plaintiff reported no difficulty, Dr. Kurzhals opined that there "*may* be limitation" in sustaining concentration and persistence in work-related activity at a reasonable pace based on his need to repeat some questions. (*Id.*, emphasis added). In contrast, he found no work-related functional limitations in social interactions with supervisors, co-workers or the public, or in dealing with normal pressures in a competitive work setting. (*Id.*)

Shortly after Dr. Kurzhals completed his report, a non-examining consultant, Paul Tangeman, Ph.D., reviewed that report along with other medical evidence and assessed Plaintiff's mental impairment as nonsevere. Dr. Tangeman found "mild" limitations in all four "paragraph B" areas, but found no work-related functional limitations. (Tr. 63). On November 27, 2021, a second agency psychological consultant, Karla Delcour, Ph.D., agreed with Dr. Tangeman's assessment of Plaintiff's mental impairment as nonsevere, with no work-related functional limitations despite "mild" limitations in the "paragraph B" areas. (Tr. 71).

8

Evaluating Dr. Kurzhals' opinion as well as those of Drs. Tangeman and Delcour at the administrative level, the ALJ found all three to be "persuasive." The ALJ reasoned that Dr. Kurzhals' opinion that Plaintiff "may" have some limitations in two functional areas based on his having to repeat some questions to be "consistent with…the other medical evidence of record demonstrating generally benign mental status findings and minimal treatment," and consistent with the determination of Plaintiff's mild impairment as nonsevere. (Tr. 24). The ALJ similarly found the opinions of Drs. Tangeman and Delcour to be "supported by a thorough review of the evidence with citations and explanations for the claimant's limitations up to the date of evaluation," and "consistent with benign findings of the claimant's mental status upon objective examination." (Tr. 24).

Plaintiff does not dispute the ALJ's reasonable analysis of the supportability and consistency of the psychological opinions. Instead, she argues that the ALJ failed to comply with the following regulation:

> When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) *but are not exactly the same, we will articulate how we considered the other most persuasive factors* in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(3) (emphasis added). The referenced factors include consideration of the relationship of the source of the opinion to the plaintiff, the specialization of the source, and any other relevant factors. 20 C.F.R. § 404.1520c(c)(3)-(5). Asserting that the three agency consulting opinions were not "exactly the same," Plaintiff insists that the ALJ reversibly erred by failing to offer greater explanation for why he did not translate Dr. Kurzhals' opinions into some form of mental RFC limitations.

9

The Court finds no reversible articulation error for two reasons. First, the psychological opinions were essentially the same from a functional standpoint, rendering harmless any possible error. In their administrative medical findings, the two non-examining consultants found no mental RFC limitations, whereas Dr. Kurzhals – *at most* – opined only that mental RFC limitations remained within the realm of possibility, but without offering opinions on any definitive or specific limitations. (*See* Tr. 24, emphasizing that Dr. Kurzhals opined only that Plaintiff "may" have functional limitations in two broad areas).[3] The ALJ pointed out that in contrast to Dr. Kurzhals' observation that he had to repeat some questions, Plaintiff had no difficulties with concentrating, understanding, talking and answering questions during her initial interview with social security agents. (Tr. 22-23, citing Tr. 195, 300). The ALJ also noted Plaintiff's lack of difficulty at the evidentiary hearing, observing that she was "able to keep up with the pace of questioning and maintain sufficient concentration to understand and answer questions." (Tr. 23; *see also* Tr. 22). And the ALJ discussed other evidence in the record, including inconsistencies in Plaintiff's subjective reports and daily activities, that supported a lack of any specific impairment in the two functional areas identified by Dr. Kurzhals.

Second, the ALJ adequately complied with the regulation to the extent that additional articulation was required. In addition to discussing the supportability and consistency factors, the ALJ noted the credentials of each agency consultant and their respective examining/non-examining roles. The ALJ emphasized that Dr. Kurzhals opined equivocally only that Plaintiff "may" have limitations in two areas, based solely on his one-time observation of having to repeat some questions during his interview. The

---

[3] Apart from Dr. Kurzhals' suggestion that Plaintiff "may" have some undetermined limitation, no examining, treating, or consulting physician offered any mental RFC limitations.

10

ALJ then explicitly discussed contrary evidence that supported his finding of no actual limitations. (Tr. 22-23).

But even if this Court concludes, as it has, that the ALJ did not commit reversible error in his analysis of the opinion evidence, Plaintiff urges remand on the basis of a different articulation error. In Plaintiff's view, the ALJ had a separate mandate to fully articulate precisely *why* he did not include functional mental RFC limitations at Step 4 of the sequential analysis. Plaintiff maintains that it was not good enough for the ALJ to rely on the evidence that undermined the need for functional limitations set forth in his Step 2 analysis. In Plaintiff's view, even if an ALJ finds an impairment to be nonsevere, he still must explicitly articulate in a separate Step 4 analysis why he found no work-related RFC limitations for that impairment.

The Court disagrees. First, Plaintiff does not appear to have carried her burden to show that she required any specific mental RFC limitation. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process); *see also, Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). In addition, the older unpublished cases on which Plaintiff relies to support her position (that this separate articulation duty exists) are factually and legally distinguishable.[4] Most importantly, recent published and controlling Sixth Circuit case law

---

[4] In *Napier v. Comm'r of Soc. Sec.*, Case No. 3:15-cv-154, 2016 WL 5334507 (S.D. Ohio, Sept. 23, 2016), for example, the ALJ committed Step 2 error by failing to discuss whether plaintiff's lumbar and thoracic spine disorders and migraines were severe or nonsevere. Given the lack of *any* significant discussion of those impairments, the Court found it impossible to follow the ALJ's reasoning for failing to assess RFC limitations. *See also, e.g.*, *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243 (S.D. Ohio, Nov. 13, 2008) (ALJ erred by finding plaintiff's foot impairment as nonsevere in light of significant evidence of severity that the ALJ failed to discuss; error was not harmless given reliance on RFC opinions of physicians who had no knowledge of the foot impairment at the time their opinions were rendered); *Johnson v. Colvin*, 3:13-cv-301, 2014 WL 6603376, at *8-9 (S.D. Ohio 2014) (ALJ erred by failing to

rejects the premise that an ALJ must expressly articulate at Step 4 why he has assessed no limitations for an impairment found to be nonsevere at Step 2. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020).

In *Emard*, the plaintiff complained both that the ALJ "did not specifically discuss the combined effect" of his impairments and that the ALJ failed to mention the plaintiff's nonsevere impairments when assessing his residual functional capacity at Step 4. *Id.*, 953 F.3d at 851. The Sixth Circuit rejected the notion that greater articulation is required:

> This court in *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589 (6th Cir. 1987), concluded that an ALJ's statement that he had conducted "a thorough review of the medical evidence of record," along with the fact that the ALJ had considered the claimant's impairments individually, sufficed to show that the ALJ had considered the impairments in combination. *Id*. at 591-92. It explained that "the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered," and "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id*. at 592. As in *Gooch*, the ALJ's statements that she had considered the entire record and all of Emard's symptoms suggest that she had considered Emard's impairments in combination.
>
> Moreover, the ALJ specifically noted in her summary of the applicable law that she was required to comply with SSR 96-8p's mandate to "consider all of the claimant's impairments, including impairments that are not severe."
>
> District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p. *See, e.g.*, *Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 WL 386152, at *4 (W.D. Mich. Feb. 2, 2016), *aff'd*, No. 16-1360, 2017 WL 4278378 (6th Cir. Jan. 30, 2017); *Davis v. Comm'r of Soc. Sec.*, No. 1:14-CV-0413, 2015 WL 5542986, at *4 (W.D. Mich. Sept. 18, 2015). These decisions have relied on this court's decision in *White v. Commissioner of Social Security*, 572 F.3d 272 (6th Cir. 2009), where an ALJ's statement that she considered a Social Security Ruling pertaining to credibility findings sufficed to show that the ALJ complied with that ruling. *Id.* at 287. The ALJ's express reference to SSR 96-8p, along with her discussion of the functional

---

adequately discuss basis for lack of limitations relating to mental disorder where extensive treatment records reflected long-term mental health treatment for a significant impairment, and ALJ also relied on non-examining agency psychologists under an incorrect legal standard).

> limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.

*Emard*, 953 F.3d at 851-52.

As in *Emard*, the ALJ here made clear that his decision was controlled by SSR 96-8p, and that he was appropriately considering both severe and nonsevere impairments in assessing the RFC as determined. (Tr. 19, citing 20 C.F.R. §§ 404.1520(e), 404.1545, and SSR 96-8p). In the course of his sequential analysis, the ALJ discussed the four broad functional areas commonly known as the "paragraph B" criteria: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting and maintaining pace; and (4) adapting or managing oneself. (Tr. 21-23). Finding no more than "mild" limitations in each area, he assessed Plaintiff's mental health impairment as "nonsevere" at Steps 2 and 3. (Tr. 23). The ALJ acknowledged that the RFC assessment required a more detailed analysis than used to rate the "severity" of a mental impairment. (Tr. 23). Nevertheless, the ALJ explained at Step 4 that the RFC that he assessed (i.e., *without* the inclusion of any specific mental limitations) "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Id.) In other words, the ALJ explicitly referred to the same body of evidence at both Steps 2 and 4.

Throughout his opinion, ALJ considered Plaintiff's testimony, functional reports, treatment records, and the opinion evidence. (Tr. 21-23). The ALJ also highlighted portions of the medical records and opinion evidence that specifically supported a lack of functional mental limitations. (Tr. 23-24). As for Plaintiff's subjective statements regarding her anxiety and depressive symptoms, the ALJ made an adverse credibility/consistency determination, reasoning that Plaintiff's subjective "statements concerning the intensity,

persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 27). Among the inconsistencies noted by the ALJ were the lack of any mental health treatment, medical records that reflected mostly normal findings, and reports that Plaintiff is able to attend to her personal care and hygiene, can prepare simple meals, manages appointments, performs some light household chores, uses the internet, manages finances, helps to care for her adult son with cancer,[5] walks her dog a short distance, watches TV, and plays boardgames. (Tr. 22-23, 26-27).[6] A credibility/consistency determination[7] cannot be disturbed "absent a compelling reason," see Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). Having closely examined the record presented including the many inconsistencies noted by the ALJ, the Court finds the ALJ's analysis of Plaintiff's subjective complaints to be substantially supported. In short, the ALJ was not required to fully credit Plaintiff's testimony that her "nerves" or limitations from her nonsevere mental impairment would preclude her ability to perform her past work.

For the reasons stated, the ALJ's thorough analysis of all relevant evidence to support the lack of any specific mental RFC limitations is substantially supported. Plaintiff's arguments in favor of a more restrictive RFC largely amount to a request to

---

[5]Plaintiff reported on her function report that she assists with caring for both her husband and son, since both are disabled, including doing the cooking and laundry and helping her son with his medications. (Tr. 205). However, she also reported that they all "have to …help each other at times." (Id.)

[6]Plaintiff did not claim that she quit work based on her symptoms. Instead, her call center job ended when the call center "shut down," coinciding with start of the Covid-19 pandemic, and she decided to stay home care for her adult son with cancer. (Tr. 299; see also Tr. 43, testimony; Tr. 198, initial interview).

[7]SSR 16-3p clarified that in the evaluation of subjective symptoms, the focus is not on the claimant's propensity for truthfulness or character ("credibility"), but rather on the consistency of his or her statements about the intensity, persistence, and limiting effects of symptoms with the relevant evidence. However, SSR 16-3p did not alter established case law that used the phrase "credibility determination." For that reason, this Court uses the hybrid phrase "credibility/consistency" determination.

have the Court reweigh the evidence in her favor, which is not the role of this Court. *Dyson v. Comm'r of Soc. Sec.*, 786 Fed. Appx. 586, 588 (6th Cir. 2019)

### B. The ALJ Reasonably Evaluated Plaintiff's Daily Activities

Plaintiff's third claim of error challenges the ALJ's adverse decision from a slightly different angle. She argues that the ALJ committed reversible error by over-relying on her daily activities, and improperly finding "that her daily activities are analogous to the demands of sustained employment." (Doc. 8 at 10, PageID 593). Plaintiff cites case law for the unremarkable proposition that the ability to perform simple daily activities, standing alone, "does not *necessarily* indicate that [a plaintiff] possesses an ability to engage in substantial gainful activity." *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) (emphasis added). Plaintiff contends more generally that the RFC is not supported by substantial evidence because the ALJ over-relied on the daily activities listed in her function report, without adequate consideration of her asserted limitations in performing those activities.

The Court finds no error here. The Court has already discussed the substantial support in the record for the ALJ's assessment of the psychological opinions and prior administrative findings concerning her mental RFC. Plaintiff's quarrel with the ALJ's assessment of her daily activity level and physical RFC is unpersuasive for similar reasons.

The only medical opinion evidence concerning Plaintiff's physical limitations came from state agency consultants. In August 2021, Philip Swedberg, M.D., opined that Plaintiff was capable of "moderate to marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects" (Tr. 288-96). The ALJ found his opinion to be "persuasive to the extent that it is supported by the physician's

15

own examination findings which were wholly normal" but reasoned (to Plaintiff's benefit) that it was "somewhat inconsistent with the other evidence in the record." (Tr. 29). In contrast to Dr. Swedberg's "normal" one-time examination findings, the ALJ noted some evidence in the clinical record of abnormal gait, wrist tenderness and decreased spinal range of motion (*Id.*)

The ALJ also considered the physical RFC opinions rendered at the initial and reconsideration levels. Consulting reviewers Elizabeth Das, M.D. and Diane Manos, M.D. reviewed Dr. Swedberg's report and other records, and opined that Plaintiff was limited to light work with additional postural limitations. Dr. Das added manipulative limitations (Tr. 65-66, 72-73). The ALJ found both their opinions to be "generally persuasive" based on their consistency and supportability. (Tr. 28-29). Thus, the ALJ incorporated the State agency opinions including the manipulative limitations assessed by Dr. Das into Plaintiff's physical RFC. (Tr. 25). The ALJ also added environmental limitations based on the record. (*Id.*)

Contrary to Plaintiff's argument, it is abundantly clear that the ALJ did not rely solely on her reported daily activities to assess her RFC. Rather, Plaintiff's daily activities were merely one component that the ALJ reasonably considered in evaluating her subjective complaints and the record as a whole. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p; *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) (as a matter of law, the ALJ may consider a claimant's household and social activities when assessing credibility).

The ALJ accurately summarized the subjective physical complaints that Plaintiff reported and testified about:

> Her alleged symptoms include back pain and weakness, hand pain, and generalized body pain. She reported that she has difficulty sitting, standing, and walking for more than a short time. The claimant testified that she can stand for about 15-minutes, sit for about 30-minutes, and walk a couple of

16

> blocks at most. She stated that her pain is consistently 6-7/10. The claimant attested that she could lift and carry about 3 pounds without aggravating her back. She reported that even light household chores take more time than would be considered typical. She does not and has never had a driver's license. She noted difficulty writing and typing.

(Tr. 26).

In discounting Plaintiff's subjective reports of disabling symptoms, the ALJ pointed to many inconsistencies throughout the record. In context, the ALJ's reference to Plaintiff's "somewhat normal level of daily activity" – including but not limited to her personal care and hygiene, ability to prepare simple meals, perform light household chores, helping to care for her son with cancer, walking her dog and using the internet – was merely one component factored into the ALJ's assessment. (See Tr. 26, finding Plaintiff's level of activity to be generally inconsistent with her report of disabling symptoms).

The ALJ was permitted to, and did, appropriately consider Plaintiff's daily activities when assessing the consistency of Plaintiff's subjectively reported symptoms with the totality of the record. (Tr. 27-28). For example, the ALJ reasonably concluded that Plaintiff's "ability to participate in such activities is not completely consistent with [her] allegations of disabling functional limitations" (Tr. 26-27). *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."). Rather than overly relying on daily activities, the ALJ discussed why the objective medical evidence, clinical records, and opinion evidence alike did not fully support Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms. (Tr. 27).

17

The ALJ also discussed Plaintiff's benign examinations and "very conservative" course of treatment, the medical opinion evidence, and prior administrative medical findings. (Tr. 28). For example, while Plaintiff attributed some of her pain, fatigue and mental impairment to fibromyalgia, Plaintiff offered insufficient evidence to establish the existence of that condition. (Tr. 21). And while Plaintiff experienced some pain and decreased range of motion because of body habitus and degenerative disc disease and had some limitation due to carpal tunnel syndrome and wrist arthritis, the ALJ noted that the record showed "intact physical function overall" (Tr. 27). Spinal imaging demonstrated multilevel facet hypertrophy and lumbar mild annular osteophytes (*Id*., citing Tr. 297). The ALJ accurately referenced only two instances of antalgic gait and mildly decreased lower extremity motor strength, contrasting those records with many others documenting normal gait and station, motor strength, intact sensation, and negative straight leg raise (Tr. 27-28). Plaintiff had documented decrease in spinal range of motion and tenderness but normal gait, stable station, and normal neurologic findings during the consultative exam. (Tr. 28). The ALJ explained that he was limiting Plaintiff to frequent handling and fingering based on evidence of some bilateral wrist pain with motion and tenderness, but that additional limitations were not appropriate because her motor and grip strength findings were within normal limits (*Id*.)

Fundamentally, Plaintiff's argument that the ALJ over-relied on the daily activities listed in her function report harkens back to the ALJ's adverse credibility/consistency determination. She complains that the ALJ cites to her function report, but does not specifically discuss more limiting statements in that same report, such as a statement that she has "to stop what I am doing to rest my back" throughout the day, and other statements that pain and fatigue severely limit her speed and stamina. But an ALJ is not

18

required to discuss every possible piece of relevant evidence including every statement that Plaintiff made in the function report; it is enough that the ALJ accurately summarized Plaintiff's subjective allegations on the whole, as he did in this case. The ALJ acknowledged that Plaintiff alleged greater RFC limitations than he assessed, but emphasized that her "allegations are not consistent with the overall evidence of record, including findings on examination and treatment sought and provided." (Tr. 27). The ALJ's decision not to fully credit Plaintiff's subjectively reported limitations is substantially supported, and easily within a reasonable "zone of choice."

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** the decision of the Commissioner to deny Plaintiff benefits is **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be closed.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge